Geico Insurance. Mr. Rhodes, we're going to give you tomorrow off, so you've been here every day. You may proceed. Thank you. Thank you, Your Honor. Brian Gowdy on behalf of the appellant, Ms. Cousin. I want to try to cover four topics if I can, and of course, any questions from the court. Number one is the central flaw in the district court's opinion, how it's focused on the actions of Mrs. Cousin's attorney. Number two is the importance of the 60-day cure period, which in Florida law, bad faith law, exists only in a first party case generally. It's only required in a first party case. Number three is causation, and then finally, I want to discuss the Harvey case that is currently pending before the Florida Supreme Court, and that was argued November 1st, and that I provided supplemental authority to before the argument. Starting with the first topic, the law is clear in Florida. Multiple times, the Florida Supreme Court has said that the focus in a bad faith action is on the actions of the insurer, and if the entire district court's order reads as though it's taking Mrs. Cousin's attorney to task, certainly, what Mrs. Cousin's attorney did or may not have done could be relevant evidence to be considered by the jury in determining the bad faith of Geico. But it's not dispositive, and Geico admits that on page 43 of the answer brief, and there's case after case after case from the Florida Supreme Court instructing that that is the improper analysis, and Geico cites cases like Berry, Dillon, and Snowden from Judge Paul in the Northern District of Florida, and in all those cases, they went to the jury. The jury weighed the evidence and looked at what the attorney and the insured did versus what the insurer did. Is it your contention, then, that evidence of what the insured's counsel did can never be considered in a summary judgment posture? No. I think it can be considered, but it's not the focus of the inquiry. The Florida Supreme Court has made it very clear. We're looking at, again, the statute, whether the insurer attempted in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his or her interests. The key words are under all the circumstances. If it's being thwarted in its effort to exercise good faith by insured's counsel, then surely that is relevant and could, under some circumstances, be effectively dispositive, right? I don't think there's a Florida case finding it dispositive. I thought, and maybe I've misapprehended the law, I think you were right in saying that the focus in a bad faith case is not on the actions in a general matter of the claimant, but rather on those of the insurer in fulfilling its obligations to the insured, but the Florida does not mean, quote, that all inquiries into prior conduct and motives are irrelevant and prejudicial. And beyond that, of all the bad faith claim derives from the duty of the insurer to the insured. The conduct of the claimant and the claimant's attorney are relevant to determining, quote, the realistic possibility of settlement within policy limits. So I guess I don't see the Florida law as being quite so airtight as you frame the question. And it seems to me, when looking at the totality of the circumstances, notwithstanding having said that the focus is on the insurer in fulfilling its obligations, a court is perfectly free. And indeed may have, depending on the case, some very good reasons to also examining the conduct of the insured in a case. Do you disagree with anything I've said? I don't disagree with anything you've said. As an exposition of Florida law as pronounced by Florida courts. Right, I think I would just add that the cases that Geico has been relying on about the relevance of the insurer's conduct, I'm sorry, the counsel's conduct, the insurer's conduct, are Berry, Dolan, both from the DCA. And they relied on Snowden, that Judge Paul wrote in the Northern District of Florida. All those went to the jury. They all went to the jury. So my point- But that in no way undermines the proposition that a reviewing court would be free to look at the conduct of the insured and its counsel, too, under the totality of the circumstances, to look at the realistic possibility of a settlement within policy limits. That's what the Florida courts have said. I'm quoting from it. I think it's all degree, Your Honor. And the focus of Judge Davis' order here was on counsel's conduct. And I kind of, if I can, want to transition to my second point, because I think it helps the court understand this, which is the 60-day cure period. Because there's a lot of talk about the deadlines that Mr. Morisi, Ms. Cousins' counsel gave. And a lot of the case law you will read is in the third-party context, where the 60-day cure period does not apply at common law. And so the importance of this 60-day cure period is the insurance company has an absolute right under the Talat case, T-A-L-A-T, from the Florida Supreme Court, 2000, that if they pay the policy limits during the 60 days after the civil remedies notice, they cannot be held in bad faith. It's the plain language of subsection 1D of 624.155. So the deadlines that Mr. Morisi were giving, I would have two things to say about them. One, they were effectively meaningless in a first-party context because of subsection 1D. Number two, in the Snowden case, talks about this. This is what lawyers do. This is puffery. I mean, I've been practicing law 20 years. I don't know how many red lines I've seen drawn and crossed over. Is it, oh, I'm sorry. Yeah, I just want, is your law firm in a business relationship with Mr. Morisi's law firm, or are y'all separate? We're separate, Your Honor. Okay. And we're, I'm an appellate counsel. I'm not, I was not involved in the trial work or the bad faith trial work. I just, I'm curious. So just so I'm clear, you've probably seen more of these than I have, but is it standard operating procedure to issue the first bad faith notice, the CRN notice, the same day that you make the demand? I don't think that is standard, and we're not relying on the first CRN in this case. We're relying on the second. But it's part of a, I guess what I'm suggesting is that it's part of a pattern of obstructive behavior on the part of the insured's counsel, and I get it that you don't think that's dispositive, but it's certainly, this is a fairly extraordinary set of facts, it seems to me. No, I wouldn't go that far either. I don't think it's extraordinary. I think that what you're bringing up is what GEICO should be allowed to talk to the jury about. But I want to bring up about the second CRN, why it's important, and why you are allowed to do multiple CRNs, is the statute says that the civil remedies notice has to give notice to the insurance company of the facts and circumstances of the violation. And if you look at the second CRN, it's got a very different description than the first one. And it focuses on the October 8th offer of $5,135, which was made after GEICO had been informed about the likelihood of the PERC disc surgery, I'll say for short, that was going to happen. And GEICO, and so the, and so at that point, Mr. Marisi had a very good faith basis to say that was a lowball offer. Now he couldn't have put that in the first CRN, I agree. But that offer, based on what they knew, was bad faith. And so the CRN went out, and they had 60 days to cure it. I do want to just, because I have a minute I see here, I want to talk about Harvey, in that case, this court's unpublished case law is being directly challenged. That is the heart of the arguments that were made. It was argued November 1st. The Novo case that was relied on by Judge Davis here. Do we have to wait until they decide that to decide this case, or can we decide this independently? I think prudence would suggest you wait. But I don't think you have to. Let me rephrase my question. Right. If there are indeed material facts in dispute, it really doesn't matter what they say in Harvey, does it? If you're right that the district court improvidently granted summary judgment because there were material facts in dispute here, and it couldn't be decided, that would yield the conclusion that the district court was wrong about its summary judgment order, no matter what they say in Harvey. Am I right or wrong about that? You're right. I just, you're right, to the extent the court- It might matter as to the legal question you've raised. Right. But it doesn't really go, because you're making two arguments if I've got it right. One, that the district court got it wrong as a matter of law and perseverated on the wrong thing, focused more on counsel than on the conduct of the insurance company, and that was legal error. And Harvey, in some sense, bears on that. But independently of that, you're arguing, if I have it right, that summary judgment ought not to have been granted because there were material questions of fact in dispute. Yes. No matter where the law settled out. Yes. Okay. And I- I think what he said, if you win, you don't mind us going ahead and ruling, right? That's correct. I would just, the Novo decision, that's an unpublished decision of this court, has been, was relied on again in Messinese. And to the extent this court were, and was inclined to recite some of the language in there, I'm just throwing- But it doesn't matter if you're right about material issues of fact in dispute. It does not matter. Can I ask you a question about that? As a Florida practitioner, when would you expect a ruling from the Florida Supreme Court on a case argued in November? Yeah, so- On November 1st. Always a tough question, and I get asked this by clients, but it will certainly be before the end of 2018 because three of the justices are leaving in January of 2019. My typical, I've had cases there decided within three months of oral argument, and I've had cases take 14 months. So, okay. You wouldn't have any different- I would think six months would be a good guess. You wouldn't have a different answer for a case argued in May, would you? Well, I would again, I would give some range of three to 14 months. Okay. And that's, I know, a pretty wide range. Thank you, counsel. Oh, it's for another case, but thank you. Thank you. Good morning, your honors. May it please the court. I'm Adam Duke. I'm here on behalf of GEICO. I'm going to respond to the plaintiff's arguments in turn, starting with the first argument they raised regarding- At some point in the course of your argument, however you want to structure it, speaking for myself, it would be helpful for me if you address the question of whether or not there weren't some material issues of fact in dispute in this case that made it tough to grant summary judgment. Absolutely, your honor. And I- At some point, however you want to do it, just take some time to address that for me. I'm happy to start with that right now, Judge Marcus. Any order you want to take? I think that it's clear from both the submissions at the summary judgment stage, as well as the appellant's brief, that there are no disputes as to what actually occurred on this case. I don't think that the plaintiffs have pointed to a single fact where they say, well, we say this happened, but GEICO says something else happened, and a jury has to sort that out. I think everybody agrees on what happened in this case, what GEICO received, what information they received, what information they knew about when they knew about it. Is there a question in dispute concerning the second settlement offer? What I'm getting at here was that while Stevens seemingly contested the reasonableness of the billing, it's undisputed that Cousins received a surgery bill for $27,340 and an additional pre-op bill, and Stevens knew that Cousins was being charged with those costs, and Stevens admitted that although she thought a typical billing range for this procedure was between $20,000 and $75,000, and that the amount estimated by Maurice was within that range, is there not a genuine issue of fact for a jury as to whether the second settlement offer was adequate given GEICO's knowledge of the surgery, knowledge of the medical bills, and Stevens' apparent admission that the bills were reasonable? And this seems to me to bear on whether or not they proceeded in bad faith or not during the second cure period. Why doesn't that bundle of facts suggest a dispute, a material dispute effect? Right. I don't believe it does, and I'll address that in two ways. I think there's two reasons it's not material to this case. The first is, and briefly, the Harris versus GEICO case, which is an unpublished decision of this court, but which was cited as persuasive by the published decision in the Cadle versus GEICO case, had an almost identical set of facts, where there was a percutaneous disectomy surgery where the medical billing for that surgery exceeded excessively the offer that was made by GEICO during the civil remedy notice timeframe, and where this court affirmed a directed verdict that was entered by the lower court, and then again was cited with favor in the published decision of Cadle. And I think that that goes directly to this issue, that there's precedent that simply because there's this type of surgery, a percutaneous disectomy surgery with this billing, doesn't mean necessarily that there is a factual dispute as to whether or not an offer that's lower than that amount is a fair offer under the circumstances. So I would direct the court to that. Your brief says that you did increase the offer based on the surgery, but I don't think that's consistent with the claims notes, because they say the increase was made because of the fibular fracture. Your Honor, I think that the offer was increased after GEICO learned about the surgery. I would agree with you that the note from the home office attorney in that timeframe indicates that the reason that he is extending additional authority is because of the fibular fracture. Now, to give a little bit of background to that situation, GEICO is divided in the way it handles claims like this between its home office in D.C. and the local regional office who separately sort of come up with recommendations and evaluations of the claim. That kind of sounds like a jury argument to me. Well, I don't think it's material. And I'll get to the second reason. The first reason I don't think it's material is because of the precedent in Harris and Cadle. But the second issue that I think is more pressing is I don't think anything in this timeframe is material, because I don't think that there is a second cure period. And this is addressed briefly at the end of our brief, but I want to expound on it because it's been argued by the plaintiff in their presentation today. If you look at the statute, what the statute says is that no action shall lie if within 60 days after filing notice, the damages are paid. And what that means, the way this statute is structured is it gives a private cause of action in these first-party insurance cases for bad faith to insureds. And it says that before you can bring that private cause of action, there's a condition precedent. And that condition precedent is you have to file notice with the department and provide it to the insurance company and then they have 60 days in which they can cure it. But if it doesn't happen, if it is not cured within that 60 days, that claim now exists and you can't unring that bell. So what happened in this case is a civil remedy notice was sent and then it expired. And on the 61st day after that first civil remedy notice, they had the right to bring this claim no matter what happened after that. So I don't agree one bit with what the plaintiffs say when they say that, well, the deadline set forth by the plaintiff's attorney here isn't relevant because there was another cure period. There was not another cure period. There was another civil remedy notice sent, but there would have been no legal effect to tendering the policy limits in response to that civil remedy notice. One thing that I find curious about this case is the different treatment of Mr. and Mrs. Cousins. You know, the payment of the full policy limits to Mr. Cousins was pretty quick and easy. And the same board certified neurosurgeon that operated on Mr. Cousins was the one that recommended the surgery for Mrs. Cousins and was characterized by Geico as a doctor with quote, well-established, with a well-established pattern of excessive billing, end quote. Your Honor, the surgeries that Mr. and Mrs. Cousins underwent were completely different. Same surgeon, but different surgeries. Completely different surgeries. And I like- So what do you say about this reference about kind of disparaging the doctor, well-established pattern of excessive billing? Well, I don't think it creates an issue of fact that this is a bad faith claim. I think that what the context of that statement is can be seen in this court's opinion in the Harris case. These types of surgeries, not the kind that was performed on Mr. Cousins, which is a well-recognized extensive surgery, requires inpatient treatment. It requires an actual incision, insertion of hardware, an overnight stay in the hospital, significant recovery time, significant expense. That is a very serious surgery. Okay, but I mean, let's talk about this procedure. This procedure is- I mean, Ms. Stevens, as Judge Marcus pointed out, testified that the cost of the procedure was within normal range. So on the one hand, you've got this evidence or the communication from Geico that this doctor was in a, he was well-established pattern of excessive billing. And then, on the other hand, your claims handlers saying $27,000 or whatever it was is within the normal range of cost for this procedure. Again, obviously, we disagree with that in a number of ways, but you're right that in- But it's your witness. It's going to be construed in the light most favorable to the plaintiff, but I don't believe it's material for the reason I was just addressing. And I wanna come back to that because I think this is the key issue. I think this is the issue that this court has to decide in order to decide this case is this issue of the second civil remedy notice and whether or not it provides a second cure period. Because if it doesn't provide a second cure period, then there is no evidence in this record that Geico had any opportunity to settle this case at the latest after 2 p.m. on the afternoon of November 12th of 2009. Let me come at the question this way. There was certainly, Geico asserts that the billing was excessive and unreasonable and that those determinations were made in good faith. Right? Yes, Your Honor. When I looked at Stephen's deposition, among other things, she says the following, if I have it right. She says, one, she wasn't sure why she said she hadn't received any documentation regarding Cousin's candidacy for surgery, notwithstanding the fact that she knew by November 6th that Cousin's had undergone the procedure. Two, she said she didn't do any billing analysis at all to determine whether Mrs. Cousin's bills were excessive. She did not recall providing any justification to Maurice as to why she thought the bills were excessive. She had never taken any percutaneous discectomy surgery case to trial. She never researched any jury verdict or tried to determine a reasonable value for the procedure. And she said that she was not aware of any settled cases involving the procedure. Is that a fair statement of what she said, among other things? I can't disagree with Your Honor that there are those statements amongst others within. Yes, okay, so we accept that. Why isn't there a remaining question, material question of fact in dispute about Geico's assertion that the billing was excessive? And unreasonable? And that these determinations were made in good faith? Two reasons. Wouldn't a jury looking at Stephen's account here come away and spin these facts and draw a different set of inferences? Two reasons, Your Honor. The first is, briefly, that Ms. Stephens was not the decision maker. Mr. Corey was. She didn't have the authority on this case. And what she's saying that Your Honor has just recounted is a bunch of I don't know, I don't have that experience, I'm not aware of that. So you're saying it's not relevant in determining whether or not the insurance company proceeded in good faith or bad faith? Yes, Your Honor. I think what's relevant is what- Utterly irrelevant to the question. What information was known by the person who actually made the decision, and whether he had that experience? I don't think the experience of, essentially, at this point, a ministerial functionary who's just doing what she is told. But he had no more information regarding the documentation from Mrs. Cousin's candidacy for surgery, or any billing analysis surrounding these facts than she did, right? He didn't have that information because it wasn't- He could only have what she could give him, plus his general knowledge in the field. That's correct. But the reason that neither one of them had that information is because they didn't have the bills from this claim, because they weren't given to them by plaintiff's counsel. And the other thing I'll say is, I have to come back to this timeframe again, because I think this is extremely critical. The first civil remedy notice expired on October 12th, or October 11th of 2009. At that point, there was no longer a cure period. There was no longer a statutory right to cure this claim or remove the bad faith claim. So after that, we're only looking at, if anything, what GEICO could have done in response to the demand that was sent by the plaintiff's attorney. And that demand expired at 2 p.m. on November 12th of 2009. And at 11 a.m. that same morning, is what the facts header on the document says, he sent for the very first time, three hours before his demand expired, a record saying that this surgery was causally related to the accident, and that she has sustained a permanent injury that was related to this accident. That was a question I had just about the timeline. Was that the first time that there was documentary medical evidence linking the back injury to the accident? Yes. Three hours before the demand. Three hours before the demand expired, yes. The demand had an expiration time of 2 p.m. that day. It was faxed over at 11 a.m. Three hours before the demand expired was the very first time GEICO was given any medical evidence that linked this back injury to the accident. The stuff that had come before, there was noise about back problems, but it wasn't linked to the accident, is that? That's absolutely correct. And there was evidence in those medical records that these were degenerative conditions. And there was evidence discovered later on that she had a prior history of back problems. The guy who didn't know about it at the time, I'm not suggesting they did. But there was evidence from which GEICO could infer that this could be preexisting, based on what they had. And there was no evidence whatsoever, no medical evidence, that she had sustained a permanent injury as a result of the accident, or that the back injury was related to the accident, until three hours before the demand expired. And there was not a cure period that extended beyond that. Let me ask you one final question. Time is short here. In your view, does the Harvey case pending in the Florida Supreme Court have any bearing on this case, or put more awfully, is there any reason we have to wait on Harvey to decide this as you see it? Absolutely not, Your Honor. I tried the Harvey case. I briefed it to the 4th DCA and the Florida Supreme Court. It has absolutely nothing to do with this case. It is a third party, bad faith case that did not involve a demand, did not involve a dispute about value. It was a death case where GEICO paid its policy limits almost immediately. It had issues surrounding a financial statement that was requested from the insured. It has facts that are completely different from this case and have absolutely no bearing on it. Thank you very much. Thank you, Your Honor. Gowdy? Can I ask you to help me again with the timeline? Does he have it right that the first time that there was any documentary medical evidence provided to GEICO that linked the back injury to the accident was November 12th? No. So when before? What he's saying is you've got to have an expert opinion drawing the line between the back injury and the accident. The accident happened on June 12th, and as of July 28th, Mr. Morisi provided extensive medical records related to the collision to GEICO, and they included her back pain. But tying it to the accident, because I think there's evidence that she had pre-existing back issues, right, chronic. There's separate evidence that they got later, but the initial records that were sent on July 28th were from Medwell, and they were treatment for the auto collision. Now did they say on July 28th you need to have surgery? No. The way this works medically is you don't just immediately have surgery and ratchet these things up. What did July 28th say? I just don't have it in my notes. Well, this was, and it was, now this is, it was related to the BI claim, which GEICO was also handling, and they tried to draw this wall. But GEICO got notice of all these records from Medwell that included that she was, and they were the folks that dealt with the auto collision, that she was suffering from pain and stiffness in her neck and back, and that she had muscle hypertosinicity in her cervical, thoracic, and lumbosacral spinal regions, was undergoing frequent physical therapy to treat the pain in her neck and back. This was less than six weeks after the collision. You just can't ignore the temporal factor. It may not be dispositive. GEICO has the right to investigate, but to say they had no evidence is false, and. Also in that filing was the police report, right? I mean. Police report. And then, you know, more evidence was provided on August 10th when the first CRN came in, more records from Medwell, a patient assessment form. But that was referring, right, to scoliosis, degenerative disc disease, things that. Well, it had some of that also, but it also had the issues with respect to the collision. And so again. Tying those conditions to the collision. I'm just trying to get straight. When it would have been clear to the reasonable investigator of these records that there was a tie between the back issues and the collision? It would have had reason to investigate once they got the medical records, and that's all that we've gotta show here. I don't, and I disagree with the Moore decision to the extent it holds you have to have an expert opinion at this stage in the litigation. The duty is on them to investigate, not us. This goes back to my original argument. But they certainly had reason to believe that she had a back injury, and the evidence continued to develop that it was not, as it kept getting treated, right? Because a permanent injury is one that you can't, that is gonna stay with you forever. And you don't know that. You don't know that the day after the accident. You can't know that the day after the accident, because you go and you try to treat it, and it may resolve itself. But I think they, by the time you get to having the surgery, that's a very extreme step. And so once, and they were told on October 5th in Mr. Maurici's letter that it looks likely that surgery's gonna happen. Again, they have reason to go investigate. And as far as, there was ultimately, unlike the Moore case, if you find that to be persuasive, which I don't believe it is, and it's unpublished and not binding, but to the extent you find it is, there was a straight out expert opinion provided on November 12th. And yes, there was the timeline, and they're gonna be able to bring that up in front of the jury. But the, if you go and you look at the Snowden case, the lawyer there said, I'm not accepting any offer. And then lawyers, guess what? You bring them and you offer them money, and they change their mind. That happens all the time. This is called puffery. That's number one. Number two, they're wrong about not, the second CRN meaning nothing. If they had made the offer, if they had paid the policy limits by December 11th, there would be no bad faith action. And just to, I can briefly touch on this. I'm involved in another case where the exact opposite argument is being made by the insurance company saying, hey, more facts developed after the first CRN. The statute, go read it. It says you have to give the facts and circumstances of the violation. You needed to send us a second CRN to give us those additional facts and circumstances as the basis for your violation. There is nothing in the statute that precludes you from sending multiple CRNs. There is no case that holds that, and it makes sense because the statute requires that the notice give you the facts and circumstances. Thank you, counsel. Thank you, your honor. Thank you both for your efforts. We'll proceed with the next case, which is.